BETTY CHATMON, Petitioner v. NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent

No. COA05-112

(Filed 20 December 2005)

1. **Administrative Law— declaratory judgment—exhaustion of administrative remedies**

The trial court did not have jurisdiction over a complaint which sought a declaratory judgment concerning the Work First Program where petitioner did not exhaust administrative reme-

dies by first seeking a declaratory ruling from the Department of Health and Human Services under N.C.G.S. § 150B-4.

**2. Public Assistance— findings—articulation of regulatory definition—inadequate ultimate findings of fact**

A superior court decision affirming a Heath and Human Services decision to issue sanctions reducing petitioner's family assistance benefits was remanded for further findings concerning petitioner's diabetic condition and her ability to work. The superior court never articulated what it considered to be the ADA definition of disability, and its findings, which merely recited the evidence, were not adequate to support a conclusion that petitioner was or was not disabled under the ADA definition.

Appeal by Petitioner from order entered 2 December 2004 by Judge W. Erwin Spainhour in Superior Court, Rowan County. Heard in the Court of Appeals 11 October 2005.

*Legal Aid of North Carolina, Inc., by Stanley B. Sprague, for petitioner-appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General Belinda A. Smith, for the State.*

WYNN, Judge.

Where a statute provides an effective administrative remedy, that remedy must be exhausted before recourse may be had to the courts. *See Affordable Care, Inc. v. N.C. State Bd. of Dental Exam'rs,* 153 N.C. App. 527, 532-33, 571 S.E.2d 52, 57 (2002). In this case, Plaintiff appealed to Superior Court seeking (1) a Declaratory Judgment that the Work First Manual violates the Americans with Disabilities Act (ADA), and (2) Judicial Review of the Final Agency Decision reducing her Work First Family assistance benefits. We dismiss Petitioner's appeal from the denial of Declaratory Judgment because she failed to first exhaust her administrative remedies, and remand the superior court's order affirming the agency's decision for further findings of fact.

The facts show that Rowan County participates as an electing county under section 108A-27.3 of the North Carolina General Statutes in the administration of a Work First Program. The statute permits Rowan County to establish its own eligibility criteria for recipients and ensure that participants engage in the minimum hours

of work activities required under the federal block grant to North Carolina for Temporary Assistance for Needy Families. 42 U.S.C. § 601 *et seq.* (2004). The North Carolina Department of Health and Human Services approved Rowan County's Work First Plan which provides that as a condition of eligibility a recipient must sign a Mutual Responsibility Agreement.

Petitioner Betty Chatmon applied for Work First benefits in Rowan County which required her to submit to a medical examination. Dr. Bradley Chotiner examined Ms. Chatmon, instructed her to fill out the medical report form, reviewed the form, made a few changes, and signed it. The medical report listed diagnosis for Ms. Chatmon including diabetes, high blood pressure, and back pain. The report stated that Ms. Chatmon could work four hours a day, three days a week.

On 24 September 2003, the Rowan County Department of Social Services (DSS) informed Ms. Chatmon that she had to sign a Mutual Responsibility Agreement which contained a provision requiring her to spend forty hours per week in a volunteer position. While Ms. Chatmon stated that she did not believe she was physically able to work forty hours per week, DSS reviewed her medical report and concluded that she could work forty hours per week in a sedentary and low-stress situation.

In addition to the work hour requirement, the Mutual Responsibility Agreement included the following conditions:

Keep all appointments as scheduled; contact Social Worker prior to appointments if unable to attend; report any problems or concerns immediately; return time cards monthly.

PRIOR NOTIFICATION TO DSS SOCIAL WORKER IS REQUIRED IF UNABLE TO ATTEND SCHEDULED ACTIVITIES.

Ms. Chatmon signed the Mutual Responsibility Agreement the same day.

DSS assigned Ms. Chatmon to volunteer with the Red Cross, beginning on 25 September 2003. But on the morning of that day, Ms. Chatmon went to Rowan Regional Medical Center's emergency room for treatment of her high blood sugar levels. She stated that she left a message with the Red Cross that she would not come in on 25 September. However, Ms. Chatmon did not report for work after that date nor did she call the Red Cross or DSS to advise them of her absence from work.

On 2 October 2003, DSS issued a notice of sanction that Ms. Chatmon's Work First check would be reduced from $257.00 to $193.00 based on her failure to comply with the Mutual Responsibility Agreement. DSS sent Ms. Chatmon a notice and scheduled a case management appointment for 7 October 2003; but, Ms. Chatmon neither attended the appointment nor responded to the notice.

Ms. Chatmon appealed the 2 October 2003 sanction to a local hearing officer who upheld the sanction on 23 October 2003. Thereafter, she appealed to the State DSS Hearings and Appeals Office which affirmed the local decision on 4 February 2004. From that decision, she filed a Petition for Judicial Review, and a Complaint for Declaratory Judgment in Superior Court, Rowan County. By Order filed 2 December 2004, the superior court affirmed the agency's decision to issue sanctions and denied the Declaratory Judgment.

On appeal to this Court, Ms. Chatmon argues that the superior court erred in (1) denying her request for a declaratory judgment and (2) affirming the agency's issuance of sanctions.

### I. Declaratory Judgment

[1] In her Complaint seeking a declaratory judgment, Ms. Chatmon contended that (1) Rowan County's Work First policy requiring all persons who are subject to a work requirement to work forty hours a week violates the Americans with Disabilities Act; and (2) North Carolina's Work First policy requiring all families work at least thirty-five hours a week violates the Americans with Disabilities Act.

Section 150B-4 of the North Carolina General Statutes provides a method for petitioners to seek a declaratory ruling with the agency. Section 150B-4 provides in pertinent part:

> On request of a person aggrieved, an agency shall issue a declaratory ruling as to the validity of a rule or as to the applicability to a given state of facts of a statute administered by the agency or of a rule or order of the agency, except when the agency for good cause finds issuance of a ruling undesirable. The agency shall prescribe in its rules the circumstances in which rulings shall or shall not be issued. A declaratory ruling is binding on the agency and the person requesting it unless it is altered or set aside by the court.

N.C. Gen. Stat. § 150B-4 (2004). However, Ms. Chatmon neither filed a declaratory judgment nor sought review of these policies

with the Department of Health and Human Services before filing the Complaint.

"Where the legislature has provided by statute an effective administrative remedy, that remedy is exclusive and its relief must be exhausted before recourse may be had to the courts." *Affordable Care, Inc.*, 153 N.C. App. at 532-33, 571 S.E.2d at 57 (quoting *Shell Island Homeowners Ass'n, Inc. v. Tomlinson*, 134 N.C. App. 217, 220-21, 517 S.E.2d 406, 410 (1999)); *see also Presnell v. Pell*, 298 N.C. 715, 721, 260 S.E.2d 611, 615 (1979); *Bryant v. Hogarth*, 127 N.C. App. 79, 83, 488 S.E.2d 269, 271, *disc. review denied*, 347 N.C. 396, 494 S.E.2d 406 (1997). Where a plaintiff has failed to exhaust his or her administrative remedies, a trial court has no subject-matter jurisdiction to hear the case. *See Bryant*, 127 N.C. App. at 83, 488 S.E.2d at 271 ("An action is properly dismissed under [Rule 12(b)(1)] for lack of subject matter jurisdiction when the plaintiff has failed to exhaust its administrative remedies."); *Porter v. N.C. Dep't of Ins.*, 40 N.C. App. 376, 381, 253 S.E.2d 44, 47 (1979); *see also Richards v. Nationwide Homes*, 263 N.C. 295, 303, 139 S.E.2d 645, 651 (1965) (holding that the question of subject matter jurisdiction may be raised at any time, even in the Supreme Court).

Since Ms. Chatmon failed to seek a declaratory ruling from the Department of Health and Human Services under section 150B-4 of the North Carolina General Statutes, the trial court did not obtain jurisdiction over the Complaint. *Bryant*, 127 N.C. App. at 83, 488 S.E.2d at 271; *Porter*, 40 N.C. App. at 381, 253 S.E.2d at 47. Accordingly, this assignment of error is dismissed.

## II. Judicial Review of Agency Decision

[2] Ms. Chatmon further argues that the superior court erred by affirming the agency's decision to issue sanctions reducing her Work First benefits. We remand for further findings of fact.

Ms. Chatmon sought review of a sanction imposed upon her first by seeking administrative review and then by filing a petition for judicial review under section 108A-79(k) of the North Carolina General Statutes. As this Court has recently reiterated, "[t]his Court's review of the superior court's order on appeal from an administrative agency decision generally involves '(1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly.' " *Luna v. Div. of Soc. Servs.*, 162 N.C. App. 1, 3, 589 S.E.2d 917, 919 (2004)

(quoting *Amanini v. N.C. Dept. of Human Res.*, 114 N.C. App. 668, 675, 443 S.E.2d 114, 118-19 (1994)).

Section 108A-79(k) of the North Carolina General Statutes provides:

> Any applicant or recipient who is dissatisfied with the final decision of [DHHS] may file . . . a petition for judicial review in superior court of the county from which the case arose. . . . The hearing shall be conducted according to the provisions of Article 4, Chapter 150B, of the North Carolina General Statutes. The court shall, on request, examine the evidence excluded at the hearing under G.S. 108A-79(e)(4) or G.S. 108A-79(i)(1) and if the evidence was improperly excluded, the court shall consider it. Notwithstanding the foregoing provisions, *the court may take testimony and examine into the facts of the case*, including excluded evidence, to determine whether the final decision is in error under federal and State law, and under the rules and regulations of the Social Services Commission or the Department of Health and Human Services. . . . Nothing in this subsection shall be construed to abrogate any rights that the county may have under Article 4 of Chapter 150B.

N.C. Gen. Stat. § 108A-79(k) (2004) (emphasis added). Thus, although a superior court is sitting in an appellate capacity when reviewing public assistance and social services decisions, the statute authorizes the superior court to engage in independent fact-finding in order to determine whether the Department of Health and Human Services' final decision is consistent with state and federal law.

The task of the superior court in this case was not to determine whether a sanction was warranted on any basis, but rather whether the Department of Health and Human Services' decision, and the basis upon which it relied, was legally and factually justified. While section 108A-79(k) authorizes a trial court to take testimony and reexamine the facts, this authorization is only "to determine whether the final decision [of the Department of Health and Human Services] *is in error* . . . ." N.C. Gen. Stat. § 108A-79(k) (emphasis added). Accordingly, section 108A-79(k) requires the trial court to sit as both a trial and appellate court. In order to give meaning to both functions, the trial court should be limited to determining whether the reason offered for the Department of Health and Human Services' decision to sanction Ms. Chatmon was factually and legally correct. Section 108A-79(k) should not be read to authorize the trial court to rehear

the case, make wholly new factual findings, and determine that alternative grounds not relied upon by the Department of Health and Human Services would also justify the sanction.

Here, an integral part of the Department of Health and Human Services' decision was its belief that Ms. Chatmon had not been discriminated against under the ADA. The Department of Health and Human Services concluded:

> There is no evidence that the appellant has been found disabled. Her physician's statement did not indicate that she was unable to work at all due to her impairments. The Americans with Disabilities Act protects the disabled so that they have equal opportunities. The county never denied her right to apply for the work program. However, the appellant must comply with work requirements of this work program unless there is clear documentation that she is unable to do so. Her physician's statement indicated she could work. The county gave her a low stress sedentary work experience. She failed to report for this work experience, not only on the day she sought treatment for her health problems, but all week. She never informed the county of this as required by her signed Mutual Responsibilities contract.

The superior court was required to address whether these conclusions were factually and legally correct.

Under the Administrative Procedure Act, the scope of review to be applied by this Court is the same as it is for other civil cases. N.C. Gen. Stat. § 150B-52 (2004); *Henderson v. N.C. Dep't of Human Res., Div. of Soc. Servs.*, 91 N.C. App. 527, 531, 372 S.E.2d 887, 890 (1988). Therefore,

> The standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. Findings of fact by the trial court in a non-jury trial . . . are conclusive on appeal if there is evidence to support those findings. A trial court's conclusions of law, however, are reviewable *de novo*.

*Medina v. Div. of Soc. Servs.*, 165 N.C. App. 502, 505, 598 S.E.2d 707, 709 (2004) (quoting *Shear v. Stevens Bldg. Co.*, 107 N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992)).

The record shows that Ms. Chatmon did not assign error to any of the superior court's findings of fact which are therefore binding on

appeal. *Id.* Moreover, she did not assign error to any specific conclusion of law. The only conclusion of law that relates to an assignment of error is conclusion of law number five: "The evidence of record does not support a conclusion that Petitioner was disabled under the ADA definition of disability." We will review this conclusion of law *de novo.*

The Americans With Disabilities Act defines disability as,

The term "disability" means, with respect to an individual—

    (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

    (B) a record of such an impairment; or

    (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2) (2004). "[W]hether a person has a disability under the ADA is an individualized inquiry." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483, 144 L. Ed. 2d 450, 463 (1999). Ms. Chatmon asserts that her physical impairment, diabetes, substantially limits a major life activity, work.

Federal regulations define "physical or mental impairment" to mean, "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: Neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine[.]" 28 C.F.R. § 35.104(1)(i)(A) (2005). Diabetes is a physical impairment. *See* 28 C.F.R § 35.104(1)(i)(B)(ii) (2005); *Johnson v. Becton Dickinson Labware, Inc.*, 2001 U.S. Dist. LEXIS 24978 at *5 (M.D.N.C. 2001).

Federal regulations define "major life activities" to mean, "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(h)(2)(i) (2005); *see also Sutton*, 527 U.S. at 491, 144 L. Ed. 2d at 468.

The question remains whether Ms. Chatmon's diabetes *substantially limited* her ability to work. Several factors are considered in determining whether a person is substantially limited in a major life activity: (1) the nature and severity of the impairment; (2) its duration or anticipated duration; and (3) its long-term impact. *Taylor*

*v. Nimock's Oil Co.*, 214 F.3d 957, 960 (8th Cir. 2000) (citing 29 C.F.R. § 1630.2(j)(2)(i)-(iii) (2004)). " 'Based on the aforementioned factors, it is evident that the term 'disability' does not include temporary medical conditions . . . .' Thus, 'a disabling, but transitory, physical or mental condition' will not trigger the protections of the ADA." *Atkins v. USF Dugan, Inc.*, 106 F. Supp. 2d 799, 804 (M.D.N.C. 1999) (quoting *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 199 (4th Cir. 1997) and *McDonald v. Pennsylvania*, 62 F.3d 92, 95-96 (3d Cir. 1995)).

The superior court made the following pertinent findings of fact relating to Ms. Chatmon's diabetic condition and her ability to work:

5. The report of medical examination listed diagnoses for Petitioner including diabetes, high blood pressure, and back pain. The report described Petitioner's diabetic condition as the current functional limitation to employment. The report stated that Petitioner could work only four hours a day, three days a week.

6. The report of medical examination failed to adequately respond to the question regarding Petitioner's expected work capacity limitations following treatment/evaluation.

7. Petitioner applied for Social Security disability benefits and was denied prior to her application for Work First.

\*\*\*

9. Petitioner told [Work First worker Patti] Kluttz that she did not believe she was physically capable of working or volunteering 40 hours per week, and that her doctor had stated she could work only 12 hours per week.

10. DSS reviewed the report of medical examination, took into consideration Petitioner's diagnoses, and concluded that Petitioner would be expected to participate in a volunteer work experience in a sedentary position, low stress situation. Ms. Kluttz told Petitioner that she must sign the agreement with the 40 hour per week requirement before she could receive Work First cash assistance.

\*\*\*

21. There is insufficient evidence in the record to support a finding that Petitioner was disabled under the Americans With Disabilities Act definition of disability.

These findings of fact are inadequate for this Court to review *de novo* whether the superior court properly affirmed the agency's decision that the sanctions did not violate the ADA.

The superior court never articulated what it considered to be "the Americans With Disabilities Act definition of disability." We cannot, therefore, determine whether it applied the correct definition. Moreover, the superior court's "findings" merely recite the evidence. This Court has repeatedly held that such statements do not constitute adequate findings of the ultimate facts. *See, e.g., Welter v. Rowan County Bd. of Comm'rs*, 160 N.C. App. 358, 365, 585 S.E.2d 472, 478 (2003) ("None of these statements are proper findings of fact in that they merely recite that there was testimony as to each of the above contentions, but do not find the facts."); *Williamson v. Williamson*, 140 N.C. App. 362, 364, 536 S.E.2d 337, 339 (2000) (noting that "mere recitations of the evidence" are not the ultimate findings required, and "do not reflect the processes of logical reasoning" required (internal quotation marks omitted)). Thus, the superior court's findings of fact are not adequate to support a conclusion either that Ms. Chatmon was or that she was not disabled under the ADA definition of disability.

Accordingly, we vacate conclusion of law five and remand to the superior court for further findings of fact as to the issues related to Ms. Chatmon's ADA contentions. Once those findings of fact have been made, then the legal issues relating to the ADA may be determined. *See Medina*, 165 N.C. App. at 508, 598 S.E.2d at 711 ("[W]e vacate the conclusions of law, leave standing the findings of fact, and remand for further proceedings. On remand, the trial court should resolve the important factual issues mentioned above and then decide the legal issue of coverage.").

Dismissed in part; Remanded in part.

Judges McGEE and GEER concur.