VICTOR H. HARRELL AND WIFE, KATHLEEN A. HARRELL v. THE CITY OF WINSTON-SALEM, JOHN T. ROBERTS, HOUSING CODE ADMINISTRATOR, A. E. SPEAS, SUPERINTENDENT OF INSPECTIONS AND HERMAN A. DISHER, HOUSING INSPECTIONS SUPERVISOR AND VICTOR H. HARRELL AND WIFE, KATHLEEN A. HARRELL v. THE CITY OF WINSTON-SALEM

Nos. 7421SC259 and 7421SC260

(Filed 17 July 1974)

Constitutional Law § 13; Municipal Corporations §§ 4, 29— housing code — dwellings unfit for human habitation — demolition without compensation

In an action against a city and members of its inspections department to recover damages for the wrongful taking of plaintiffs' property based on an order that plaintiffs either repair or demolish certain frame dwellings declared unfit for human habitation and on the city's demolition of certain other dwellings, defendants were entitled to summary judgment as a matter of law since (1) plaintiffs have not exhausted administrative remedies available to them, G.S. 160A-446, and (2) defendant city could properly take such action without the payment of compensation to plaintiffs.

APPEAL by plaintiffs from *Wood, Judge,* 22 October 1973 Session of Superior Court held in FORSYTH County. Argued in the Court of Appeals 8 May 1974.

Harrell v. City of Winston-Salem

These are civil actions, wherein the plaintiffs, Victor H. Harrell and his wife, Kathleen A. Harrell, seek to recover from defendants, damages for the alleged wrongful taking of their property and demolition costs (Count I) and damages for exposing the plaintiffs to public ridicule (Count II).

The complaint in case No. 7421SC260 was filed on 5 March 1973 against defendant City of Winston-Salem, while the complaint in case No. 7421SC259 was filed on 20 June 1973 against defendants City of Winston-Salem et al. Although some of the defendants named in case No. 7421SC259 were not named in case No. 7421SC260, the allegations and prayers for relief contained within the two complaints are essentially identical.

Plaintiffs own a number of frame dwellings in Winston-Salem and have engaged in a running feud with defendants for some time over the condition of these dwellings. The record discloses that after notice was given to plaintiffs and hearings were held, several of these dwellings were declared unfit for human habitation. Subsequently, the plaintiffs were ordered either to repair or to demolish the dwellings; however, these dwellings have neither been repaired or demolished. Other frame dwellings owned by plaintiffs were demolished by defendant after notice was given and hearings held and after plaintiffs had failed either to repair or to demolish the dwellings.

The circumstances which gave rise to the present suit may best be explained by the following chronology of events:

On 18 December 1969 and on 1 November 1971 the Board of Aldermen of the City of Winston-Salem confirmed orders calling for the demolition of certain dwellings owned by the plaintiffs. Subsequent to these dates, five dwellings were in fact demolished by the defendant City of Winston-Salem; and the cost of such demolition was taxed to the plaintiffs.

On 15 February 1973 a complaint and notice of hearing on several other dwellings owned by plaintiffs was issued by the Superintendent of Inspection for the City of Winston-Salem. On 28 February 1973 the hearing was conducted; and on 2 March 1973, an order was issued by the Housing Code Administrator of the City of Winston-Salem, giving the plaintiffs the opportunity to repair the dwellings within sixty (60) days so as to conform with the City of Winston-Salem's standards of habitation. This order was excepted to by plaintiffs; and on 12 March 1973, they

gave notice of appeal to the Zoning Board of Adjustment. In the interim between the order of 2 March 1973 and the plaintiffs' notice of appeal to the Zoning Board of Adjustment on 12 March 1973, the plaintiffs on 5 March 1973 filed the first of their two complaints (case No. 7421SC260).

With respect to the houses which had not been demolished when the first complaint was filed on 5 March 1973, the record discloses that on 5 April 1973 the Zoning Board of Adjustment heard the plaintiffs' appeal from the Superintendent of Inspections and thereafter the Board of Adjustment affirmed the order permitting repairs to be made within sixty (60) days.

On 21 May 1973 the Board of Aldermen of the City of Winston-Salem adopted an ordinance requiring that the plaintiffs demolish the dwellings in question prior to 21 June 1973 or the city would demolish them and the plaintiffs would have to bear the expense of demolition. On 20 June 1973 the plaintiffs filed their second complaint (case No. 7421SC259) and also filed in the Superior Court simultaneously with this complaint a petition for certiorari and a petition for a temporary restraining order.

On 20 June 1973, Judge McLelland entered an order granting plaintiffs' petition for a writ of certiorari to review the prior proceedings in this matter, and also entered an order enjoining the City of Winston-Salem and its agents, employees, and servants from carrying out the ordinance ordering the demolition of plaintiffs' houses. On 27 June 1973, the defendants filed a motion asking the court to vacate the temporary restraining order and writ of certiorari; and on 11 July 1973, Judge McLelland entered an order vacating the temporary restraining order and the writ of certiorari.

On 27 June 1973 the defendants also made a motion to dismiss case No. 7421SC259 "on the grounds that a previous proceeding between the same parties and for substantially the same cause has heretofore been filed in this Court . . . . " On 11 July 1973 an order was entered dismissing case No. 7421SC259 and in so ordering this dismissal, the court stated that plaintiffs would be granted leave to amend their complaint in case No. 7421SC260. Plaintiffs did not except to the entering of this order nor does the record disclose that they ever amended their complaint.

Harrell v. City of Winston-Salem

On 26 October 1973 Judge Wood, acting on defendants' motions for summary judgment filed in case No. 7421SC260 and case No. 7421SC259, said motions having been filed on 29 March 1973 and 18 July 1973 respectively, entered summary judgment in favor of defendants in both cases.

The plaintiffs appealed.

*W. Warren Sparrow for plaintiff appellants.*

*Womble, Carlyle, Sandridge & Rice by Roddey M. Ligon, Jr., for defendant appellees.*

HEDRICK, Judge.

While the summary judgment appealed from appears to apply to both cases filed by plaintiffs, it obviously does not apply to the case filed 20 June 1973, since that case was dismissed by the order of the Superior Court dated 11 July 1973; and the plaintiffs did not except to or appeal from that order, nor did the plaintiffs except to or appeal from the order vacating the writ of certiorari and the restraining order. Furthermore, when these cases were argued in the Court of Appeals, plaintiffs' counsel, in response to a question by the court, stated that the plaintiffs had abandoned their alleged claim for damages set out in Count II of their complaints. Our review on this appeal, therefore, is limited to the question of whether summary judgment for defendants was proper with respect to plaintiffs' claim for damages as set out in Count I of the complaint filed on 5 March 1973.

The following pertinent allegations appear in Count I of the complaint filed on 5 March 1973:

"5. From time to time defendant, purportedly acting under its housing code, has caused orders to issue whereby plaintiffs were required to demolish certain frame dwellings owned by them on portions of the property described below, all owned by plaintiffs:

(a) 1026 North Trade Street
(b) 1030 North Trade Street
(c) 1036 North Trade Street
(d) 204-06 10-1/2 Street
(e) 205-07 10-1/2 Street
(f) 210-12 10-1/2 Street

 (g) 216 10-1/2 Street
 (h) 217-19 10-1/2 Street
 (i) 218-20 10-1/2 Street
 (j) 226-28 10-1/2 Street
 (k) 1031-33 Oak Street

 6. As a result of these orders and previous administrative determinations by defendant's inspection division, plaintiffs were precluded under threat of criminal prosecution from making any alterations or repairs on their property. Plaintiffs made repeated attempts to repair or improve their property but were never issued appropriate building permits. The city's decision to preclude repair of the premises described above was without justification or excuse and an unlawful exercise of police power.

 7. In addition to orders referred to above, defendant DEMOLISHED five dwellings owned by plaintiffs:

 (a) 209-11 10-1/2 Street
 (b) 221 10-1/2 Street
 (c) 222-24  10-1/2 Street
 (d) 225 10-1/2 Street
 (e) 1037-39 Oak Street

 Upon demolition, defendant charged plaintiffs $1,554.53 for the destruction of their property. Plaintiffs are informed and believe and therefore allege that their demolition and resulting expense were unlawful acts by defendant, constituting a wrongful taking of their property without due process of law."

Defendant City of Winston-Salem in its answer alleged that it had followed the procedures prescribed by law in that in each instance the plaintiffs were given notice and a hearing and no demolition order was issued until the plaintiffs had been fully afforded procedural due process. Furthermore, the defendant denied its actions in demolishing some of the dwellings constituted a wrongful taking of property without due process of law.

 In support of its motion for summary judgment, the defendant city filed an affidavit of A. E. Speas, Superintendent of Inspections, alleging that the defendant city had followed the prescribed statutory procedure in entering all of its orders relating to the demolition or repair of any of plaintiff's property.

The affidavit further discloses that the plaintiffs did not appeal from any order entered with respect to the houses which were eventually demolished; while, with respect to some of the houses which were ordered to be repaired or demolished, the plaintiffs had appealed to the Zoning Board of Adjustment. This latter appeal was heard and decided by the Zoning Board of Adjustment on 5 April 1973. The plaintiffs filed no affidavits in opposition to the motion for summary judgment.

G.S. 1A-1, Rule 56(e), Rules of Civil Procedure, provides in part:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

A careful examination of the pleadings filed in this case in conjunction with the affidavit filed by defendant in support of its motion for summary judgment, coupled with the absence of the filing of any counter-affidavits by plaintiffs, leads us to the conclusion that Judge Wood was correct in finding no genuine issue as to any material fact. See, *Pridgen v. Hughes*, 9 N.C. App. 635, 177 S.E. 2d 425 (1970). Thus, we are left only to consider if the defendant is entitled to judgment as a matter of law. G.S. 1A-1, Rule 56(c), Rules of Civil Procedure.

G.S. 160A-441 et seq. was enacted for the purpose of insuring that minimum housing standards would be achieved in the cities and counties of this State. G.S. 160A-443 authorizes a public officer, as that term is defined in G.S. 160A-442(7), to enforce ordinances relating to unfit and unsafe dwellings by ordering the repair, alteration, or improvement of dwellings or the removal or demolition of such buildings. G.S. 160A-446 delineates the administrative remedies which are available to a property owner who is aggrieved by an order of a public officer. In the instant case, the record on its face reveals that the plaintiffs have not followed the proper review procedure as set forth in G.S. 160A-446, but rather have attempted to circumvent the established procedure by filing the cause of action now being considered. Plaintiffs must exhaust the ad-

ministrative remedies available to them, and they cannot be allowed to undermine the prescribed statutory procedure set forth in G.S. 160A-446. See, *Snow v. Board of Architecture,* 273 N.C. 559, 160 S.E. 2d 719 (1968); *Sanford v. Oil Co.,* 244 N.C. 388, 93 S.E. 2d 560 (1956).

Furthermore, in *Horton v. Gulledge,* 277 N.C. 353, 177 S.E. 2d 885 (1970), Justice Lake in discussing the propriety of the taking of property without just compensation stated:

"It is quite true that the police power of the State, which it may delegate to its municipal corporation, extends to the prohibition of a use of private property which may reasonably be deemed to threaten the public health, safety, or morals or the general welfare and that, when necessary to safeguard such public interest, it may be exercised, without payment of compensation to the owner, even though the property is thereby rendered substantially worthless."

Therefore, we determine that Judge Wood was correct in concluding as a matter of law that the defendants were entitled to summary judgment as to Count I of the Complaint filed on 5 March 1973.

The judgment appealed from is

Affirmed.

Judges BRITT and CARSON concur.